Good morning, Your Honors, and may it please the Court. Nick Sansone on behalf of Amanda Daghaly. With the Court's permission, I'll reserve two minutes for rebuttal. Thank you. Bloomingdales operates a website that it uses to build up its client base in California, one of its principal markets. Relying on this Court's settled precedent, the District Court correctly held that this website is expressly aimed into California because Bloomingdales uses it to cultivate and serve a market there. But the District Court then went on to hold that Ms. Daghaly's claims are unrelated to Bloomingdales' California contacts. This was error. Ms. Daghaly, a prospective California customer, claims that Bloomingdales engaged in unlawful surveillance activity while she was browsing the website that Bloomingdales expressly aims into California in order to market and sell goods to shoppers there. I have two things to say. One is that it might be wise to concentrate on the standing issue because the personal jurisdiction issue is going to be likely governed by a case pending on the bank. Related to that, what exactly are the allegations in the complaint about what Ms. Daghaly was doing on this website and why her privacy interests were invaded? Certainly, Your Honor. There are no allegations in the complaint about the specific content that Ms. Daghaly entered onto the website. But the complaint alleges that any time a user accesses the website, what happens is essentially a screen video of the activity. All of the mouse movements, clicks, et cetera, page resizes that occur on that website are recorded. But what I'm asking is where are the allegations about Ms. Daghaly and what she was doing? So there are no specific allegations about exactly what she did on the website. Why not? Why didn't you allege that? I'm sorry? Why not? Why aren't there any specific allegations? Because essentially the nature of the violation is that it's the video recording. It's not the fact that she put in any sort of specific sensitive information. It's the fact that this website records everything you're doing, whether what you're doing is benign, whether it's— But I'm not even asking that. Tell me where in the complaint it says anything about Ms. Daghaly. Okay. So at paragraphs 42 through 61, or excuse me, 42 through 49, the complaint alleges sort of what happens when a user, including Ms. Daghaly, logs on— Does she go on the website because she was thinking of buying something? It doesn't say that, right? That's not specifically alleged. But the purpose of the website is to court shoppers, is to attract individuals to sell goods. And that is the conduct that is expressly aimed into the state of California. And so whether or not the reason that she's accessing the site doesn't go to the nature of the violation that she experienced, which was the recording of everything she did. And I think this court's decision in Eichenberger is helpful. That case concerned a federal statute that protected people's video rental history. And nothing in this court's opinion in Eichenberger suggested that the nature of one's video rentals, whether they were particularly sensitive titles or anything like that, bore on the extent of the privacy violation. But is there anything alleged about what she—I mean, for all we know, she could have just gone to the website and said, oop, didn't mean to go to Bloomingdale's. I wanted to go to Lord & Taylor and left. Certainly. And if that is what happened, it would still be a privacy violation for Bloomingdale's to video record that happening. Just that she simply looked at the website without entering any data at all. Without entering data, but certainly her cursor would have had to have moved. She would have had to have gone and clicked out of the website. So there would have been something recorded, and it would have been whatever was going on on her screen at that time. And why is that a privacy violation? Because under the California Invasion of Privacy Act, California wrote this statute to protect online information or information conducted through the wires from being intercepted. And I think one thing that's important to keep in mind here is that the complaint doesn't just allege that Bloomingdale's is capturing this information and just sort of keeping it in a closet. Bloomingdale's is sending these videos, sending this information to Metta, to Full Story, to other third parties that then stitch that information into individualized, person-specific profiles. And this court's opinion in the Facebook tracking litigation has made clear that that sort of ability to stitch together a composite picture of somebody's online activities implicates the sort of core Article III privacy requirements. But she still has to have some sort of an injury. So if you were given an opportunity to amend, would you be able to allege what it was? Would she be able to say what it was she actually entered into the website? I'm not certain about that without consulting. But I do think that this court's privacy, you know, the opinions of this court, Patel, Campbell, Facebook tracking litigation, Jones, in none of those cases did the court look to the plaintiff-specific information that was conveyed. But in the Facebook tracking case, part of the allegations were that the conduct was tracked even when they were off the website. That it continued tracking you, which seems much more invasive than if perhaps all it was was going to Bloomingdale's and saying, oops, I meant Macy's, or I meant Lord & Taylor, or whatever. I'm not sure we have a case that's so minimal. Do you have any case that's as minimal as this? I can't think of a case that's sort of directly on all fours with this one. But what I will say is I think Your Honor's question goes to the extent of the injury rather than the nature of the injury. And so we can imagine if somebody is beaming a surveillance camera into somebody's apartment window, and you just catch two seconds of somebody cooking dinner and they're not doing anything particularly personal or private, that is still an invasion of privacy. I mean, I think I would analogize to, for example, trespass cases, which have a long common law pedigree. Setting a toe over somebody's property line for a couple seconds, courts have not required anything beyond the invasion of that property, right? In order to establish that there is a legal injury there, there is an injury that's cognizable. Damages may be minimal in that case, but it's the nature of the injury. The problem is that the TransUnion and Philipson cases like that seem to be insisting that it isn't enough to have a legal injury. And this case may be on the other side of that because there's a privacy interest asserted, and we have held that this statute protects privacy. But once you... But you still have to demonstrate in some way that the allegations here... So the statute is one that protects privacy, but I don't think you can then go to the point that says, and therefore if it violates the statute, that's all that matters. She still has to allege an interest in privacy, right? The question is... I mean, this is... I guess my reaction, this is a very strange plaintiff for a case like this. You'd think you'd have a plaintiff who actually went on the website and bought something at Bloomingdale's or something like that. It's just a strange, minimalist way of pleading this. Well, I think the way to think about TransUnion, and I'll point out that the cases like Patel, Campbell, Facebook, tracking litigation, they all postdated Spokeo, which sort of laid out the governing legal standard that the court then went on to apply in TransUnion. But it's clear that the statute is a privacy-protecting statute. That's not the problem. So, I mean, you are through one loop here. But the question is this plaintiff. And, again, I think that because the statute is designed to protect against the interception of online communications, just like the statute in Eichenberger was designed to protect against the disclosure of video rental histories, no matter what that revealed about the plaintiff, no matter what the sort of extent of the violation was, it is the substance of the injury rather than the sort of extent. And, again, I would analogize it to a trespass case. There are countless cases from the Supreme Court saying that in the context of monetary injury, you know, 10 cents, 25 cents, that's enough to create standing because the injury is concrete. Even if it may not be particularly large. What differentiates Ms. Duggally from just anybody in the world who didn't even go on the website? Well, what would differentiate her from somebody who didn't go on the website is that her online conduct was recorded. But we don't know what the online conduct is. So let me ask you a specific question. Let's say I go on to this website and I realize it was a mistake and then I type in Macy's, you know, in the window where you type in the next website. Does this record where I'm going next? Or does it just record what I enter on the Bloomingdale's website? In other words, does it record what I put in my browser about where I want to go to from the Bloomingdale's website? I don't know the answer to that, as a matter of fact. So, in theory, what could have happened here, for all we know, because the complaint doesn't say otherwise, is that Ms. Duggally could have gone on there, realized she made a mistake, typed in some other website, and we don't even know whether it recorded that. So if that's the situation and we don't know that it is, then how is she different from anybody else in the world? Well, again, what would differentiate her is that that act of being on the website, moving her mouse, whatever, was recorded. So it's the fact that she went on to the website that you're considering that public and private information? Yes. And, you know, whatever movements, you know, sort of... But you're saying that even if there were no movements, it's still a violation? Just the fact that she went on the website, that's enough? I believe it would be. I mean, I believe that there would have to be some kind of movement to sort of click out or get out of the website. But, again, it's the video recording, and it is the transmission of that to other organizations, to other companies. So if I right now on my iPad type in Bloomingdales.com, go to the website, and do nothing more than type into the thing Macy's.com, then I could be a plaintiff too? I think California has made that legislative policy choice. And all that's happened is I just went on the website. That's enough to be a privacy violation? I believe it would be. If that were recorded and then sent on to other companies that then used that information to contribute to a composite personal profile of you. Didn't she allege that she engaged in communications and entered data on the Bloomingdale's website? So that's more than simply going there. That's correct. That's correct. So this case would not present Your Honor's hypothetical. Where does it say that? You said paragraphs 42 to 61. Which is the one that says that she entered something? 42 just says she visited Bloomingdales.com while in California. Specifically, she accessed Bloomingdales.com via the web browser on her phone and computer. I can find the site for that and have it on rebuttal, Your Honor. If you could get past this issue about whether there's standing for some of the complaint. I think you also asserted in your brief that she doesn't even need to show standing for injunctive relief. She can just seek injunctive relief without showing standing for that remedy. That seems to conflict directly with TransUnion. It says you have to show standing for each form of relief. Do you have any site other than DZ Reserve, which I don't think supports the proposition for that assertion in your brief? No, Your Honor. We're not contending that she does not need to have standing to seek injunctive relief. We agree that she does need to show standing to seek injunctive relief. Okay. Then we've taken you over your time, but I'll still give you two minutes for rebuttal. Okay. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. The only allegation that we've identified in the complaint as to what happened with Ms. Degali, particularly, is paragraph 42. All that is alleged there is that she visited the website from both her phone and her computer. And I think as the questions suggested, and I think my friend has also suggested, within 30 seconds, anyone in this courtroom could file the same complaint. They could be the named plaintiff in a putative class action seeking billions of dollars on behalf of everyone who's ever visited the Bloomingdale's website just by the very fact of going to the website. There's no case in this court that we're aware of that would support that result. There's an unpublished decision, the Court's decision in Cahan v. Toyota, where two members of this panel were also on that panel, affirmed the dismissal for lack of standing when the plaintiff alleged that Toyota collected data from their vehicles and shared that data with third parties. The Court affirmed the dismissal because there was no specific allegations as to why that data was sensitive or had individually identifiable information. The same reasoning applies here. We talk about the claim under CEPA. CEPA is called the California Invasion of Privacy Act. It may have extended privacy protections to online, to Internet sites, to wires, but that was the extent of the expansion. It did not change the fundamental premise of an invasion of privacy claim, which is that you must allege an invasion to your privacy. You must allege that somebody obtained information that you have a reasonable expectation of privacy. Suppose she amended the complaint to say, while I was on the website I looked at X product and Y product and that information has been recorded and is being transmitted. Would that be a sufficient allegation of invasion of privacy? If she alleged that information that was collected, identified the information and had an allegation that it was private or sensitive, yes, that could give rise. That's why I'm asking. Is your concern that it's not private or sensitive enough? That is, the fact that she was looking at certain dresses or certain shoes is not a privacy problem? Is that what you're saying? We would say that if that was alleged. The information, and let me step back and say why I think my friend didn't ask for a remand to plead more allegations. The issue that they run into in these cases, and I'm sure the court's aware there are a lot of these cases that have a varying degree of specificity, is that on the bottom of the homepage, on the Bloomingdale's homepage, there's a link to Bloomingdale's privacy policy. It clearly discloses that it's going to collect information, it's going to share that information with third parties. When you make a purchase on the Bloomingdale's website, you have to agree to Bloomingdale's privacy policy. So anyone who makes a purchase on the Bloomingdale's website agrees that their information can be collected and shared with third parties. And so the reason that complaints like this are limited to the bare fact of visiting the website and the allegation is that the violation of privacy is complete upon arrival of the website, is it allows them to plead a violation before someone makes a purchase and consents to the collection. And so that would be the problem, I think, and a lot of plaintiffs, why they decide not to, or in a putative class action, not bring forth a named plaintiff that made a purchase. They would run into the privacy policy issues. I guess what I was asking you is this. Let's assume that, and I think it's true, that the kind of allegations I suggested would set up a violation of SIPA, i.e., if you're collecting information about what somebody is doing on the website in terms of what they're looking at and what kinds of products and so on, even if they don't buy anything, right? Would that be a SIPA violation? I don't think all of them would. I think it would be a different case, and you could make a different case, if it collected medical information. If you alleged you went to WebMD and you clicked on a link that you then said disclosed information. The fact that I'm looking at certain dresses, I mean, I don't want people to know what kind of dresses I'm looking at, or I'm looking at underwear. I don't want them to know what kind of underwear I'm looking at. That's not a privacy violation. That's not a SIPA violation, is the first thing. Is that a SIPA violation? No. The information that's alleged here about the movements on the website, the clicks and scrolls. I'm not asking you that. I'm asking about my hypothetical. Right. I'm trying to find out whether you're arguing that SIPA doesn't cover this or that there's some overriding other concept of privacy that requires that the information be sensitive and not just not your business. It's not your business what underwear I'm looking at or what shoes I'm looking at. Is that enough, or does it have to be I'm looking at medical information? Our position is that that would not be enough, just that you are looking at shoes. Or that there's a privacy override under TransUnion and so on. Go ahead. Our position would be both. Under SIPA, we would rely on the distinction between the contents of the communication and record information that's not required under SIPA. Going back to even the allegation that you viewed a particular piece of item, the actual communications that a plaintiff sends in order to be able to view that, as they talk about it, is a click or movement on the website. Our position is that sort of information is the sort of routing information that the court has said you don't have a reasonable expectation in privacy. In order to make the Bloomingdale's website function Where is the court sent that? I think the best case for us would be United States v. Forrester. That involved, it was a Fourth Amendment case, but the court in cases like in Ray Facebook had pointed out the similarities between for an intrusion upon seclusion, the requirement is a legitimate expectation of privacy. Fourth Amendment, reasonable expectation of privacy. But what the court said in United States v. Forrester, you don't have a reasonable expectation of privacy in the email address that you're sending an email to, the from address, an IP address of the computer, and it says people who use the internet understand that if I want my email to reach its intended recipient, I need to disclose the email address. That's the same logic the Supreme Court used all the way... So let me tweak Judge Berzon's hypothetical a little bit. So let's say that I go onto Bloomingdale's website and I look for women's underwear in a size that wouldn't fit my wife, okay? And the reason I go on the website is that I don't want to go into a store and do it because then people would see me, and I don't buy anything. So the privacy policy you say applies when you buy something doesn't ever kick in. Isn't what I was doing private? I mean, if somebody was looking over my shoulder while I was doing it, I would certainly consider that a privacy violation. Would that count? Yeah, you would have a strong argument that that would be a privacy violation. There's a footnote in the court's decision in In Re Facebook talking about a general rule that the page that you visit on a website wouldn't have a reasonable expectation of privacy in that, but there could be something about the page that disclosed private or sensitive information. I don't think it's enough, and I think that footnote in In Re Facebook makes this clear. It's not enough that it discloses information. It has to be an invasion of privacy, and so it has to be something that is private. That's our position here. We are not asking the court to adopt a categorical rule that the things you view on a website could never give rise to a privacy violation. We're asking the court, where we started this discussion, what is in this complaint? There's nothing in this complaint of anything she did other than visit the website. Can I ask you, so this hypothetical, it sounds like you're conceding that that would be, there could be Article III standing in that situation. As a matter of SIPA, I think Judge Berzon was also asking you, as a statutory matter, what is covered by SIPA. What in SIPA covers that but not more benign pages? So I think we would take the position that that would not be covered under SIPA. There is the distinction, so in SIPA says, the particular provision that's alleged to be violated here is that the person who intercepts the communication has to attempt to read or learn the contents of the communication. So even a communication, the courts have distinguished between the contents and then the record information. But the content of looking at underwear is content. The content of looking at sneakers is content. So what in SIPA says it covers underwear but not sneakers? But the looking isn't the communication. I think that's our position and what courts have held this, is the information you send, your communication, the website user's communication to the website operator. Okay, so the communication is searching women's underwear or searching sneakers. Both of those are content. And you're saying SIPA covers underwear but not sneakers? Or that it covers both? SIPA would cover both. If you're typing it in, that could be a different case. We don't have allegations of information typed in here. That runs the plaintiff's inventory. It took this long to get an answer to the question. So then the question is, if that's the case, is there then an override Article 3 privacy concept that says that that isn't enough for Article 3 purposes? Yes. For Article 3, you have to allege a concrete injury. It has to be a concrete injury to privacy. I've heard that before.  What I'm asking you is, since SIPA would cover, we've now established finally, the typing in to a search engine on the search piece on the women's health website underwear, it would cover that. SIPA would. And sneakers. Let's use sneakers. All right, sneakers. So it would cover typing in sneakers, right? Now, is it your position that that's still not enough for Article 3 standard? The sneakers, I think our position would be that that would be, unless they articulated a reason why. And that's what the court said in Cayhan. So we're supposed to sit around and figure out that sneakers are, that underwear is private, but sneakers isn't private. No, the court does not need to see that. At a minimum, you need an allegation from the plaintiff of what they searched for and why they think that that's private and sensitive information. And private because I don't want people to know that I'm buying sneakers. Is that good enough? That may be good enough. But it may not be because the case law is clear that it has to be an objective, it's a reasonable expectation of privacy. So it's not a subjective view. You would then look to the case law for analogous information to see whether that would be treated as privacy. Isn't that a very strange role for courts to make decisions about what is objectively, quote, private when it's all about purchasing things that nobody else would know about? I mean, no one's going to know what I bought ordinarily. So why isn't that just enough? It's private what I bought. Well, so two things. Where am I as a judge supposed to get some other principle that says that buying underwear is private, buying sneakers isn't private? You start with the common law, you start with the tradition of court. Is there a common law about underwear is private and sneakers aren't private? There is a common law about what types of information do you have a reasonable expectation of privacy in. And in fact, the restatement of torts on intrusion upon seclusion has an example that specifically calls out that underwear is private. It says when you're in public, you generally don't have any reasonable expectation of privacy. The comment, I think this is comment B, says, but there's an exception to that. Even when you're in public, you have a reasonable expectation in your underwear. It is very fact specific, but what the Supreme Court has said in Spokio and TransUnion, we start by looking at the common law. You try to identify a harm that was recognized at common law. They point to intrusion upon seclusion and when you're dealing with intrusion upon seclusion. But we already have case law that says that this statute is a substantive protection of privacy. It doesn't distinguish between what in the statute. The statute is substantially protecting privacy with regard to any communication that's in the statute. So isn't this just established case law in the circuit with regard to that question? I mean, we still have the problem of the plaintiff here, whether she's said enough even to get that far. But it seems that under our case law, anything that violates SIPA is an invasion of privacy if it's specifically an affilage. Is that not true? No. The case law is clear that under the court's case law, SIPA protects violations of the right of privacy. It's called the California Invasion of Privacy Act. And the court has distinguished. In the cases in which the court has said enough has been alleged for standing, private information was at issue. The court's decision in Campbell versus Facebook, Judge Friedland, in your footnote nine, you said, it would be a different case. And we are emphasizing it would be a different case if what was alleged to have been captured was aggregated, anonymized data. Because it still requires that the information at issue is private. Anonymized data would presumably not violate SIPA. It could. There's nothing in SIPA that distinguishes between anonymized and unanonymized. I don't think this complaint is talking about anonymized, as I understand it. I mean, it at least alleges that it's, I guess, from the IP address, gathered into some personally identifiable profile. It alleges the capability of that happening. There's no alleged allegation that that happened to her. There's no allegation of any information that Ms. Degali provided. So there's no basis for this plaintiff. We're not asking the court to hold that no plaintiff could plead facts that would suggest both a SIPA violation and standing. I think going back to Judge Berzon's point, is the question about, hasn't this circuit said, as long as you allege a violation of SIPA, that's enough? I don't think the court has said that. I don't think the court could say that in light of TransUnion and Spokio. In cases like NRA, Facebook, the court still, after interpreting SIPA and the Federal Wiretap Act to codify a right to privacy, it then went on and looked at the allegations to see if there were allegations that the information that was captured was private. But I think the question that's confusing, and I have the same question it seems like Judge Berzon is asking, is, OK, the analysis says this statute codifies a common law principle, so that passes that part of Spokio. But then when the court goes on and says, and this plaintiff has the privacy, is it just saying that plaintiff falls within SIPA? Or is it saying something more? Like, not just do they fall within SIPA, but they do it the right way or something? Yeah, and I don't think it's clear from what the court is saying whether it is interpreting SIPA to only that in order to plead a violation of SIPA, you have to plead that the contents of the communication that were intercepted are themselves private. But regardless of whether that's what the court is saying, it's clear. Because SIPA could be overbroad, right? SIPA could be OK to protect privacy. You could have a SIPA claim that would satisfy Article III. But perhaps you could also have a SIPA claim that doesn't satisfy Article III. I don't know that our cases do resolve that. I don't think there's a clear answer to that. But I think what the cases make clear is that in order to get over both the SIPA pleading hurdle and the Article III hurdle, as interpreted both by Spokio and TransUnion, the information that you allege has to be private. I think that was kind of fundamental to the court's affirmance in Cahan. And I realize that was unpublished. But a lot of times, the reason it was unpublished and the way the opinion was written, it started with settled circuit precedent. It looked at the allegations. But it's unpublished and it's not precedent, so forget it. Yeah, but it was really focused on the allegations there and pointed out there was no allegation in that complaint that the plaintiff alleged that the information that was collected and shared with third parties was sensitive. If I could, I know I'm over my time. If I could take one minute to address the personal jurisdiction issue and really focus on one reason why we think this case is different than Briskin and that decision may not be controlling. In these cases, you can't have an alleged violation of SIPA with just two parties. If it's just the website operator and the user, there's no SIPA violation because there's a party exemption. So the third party sort of back-end data collector is critical to an allegation of a SIPA violation. And so the allegation in these cases is... But here they say that they shared the information with someone else, these profiles with someone else. Doesn't that get you the third party? No, so what they allege here is that Bloomingdale's violated SIPA by aiding and embedding the third parties and conspiring with them. And so I think the key point is that what the court is looking at in Briskin is what allegations and what conduct is sufficient to establish personal jurisdiction over the third party itself, right? The website operator is not at issue in Briskin. Here we're dealing with the website operator. And so even though it's kind of the same... Why would it not be worse for Bloomingdale's instead of better? I don't really understand your argument. Sure, because to establish personal jurisdiction, you look only at the conduct of the defendant. And what is alleged here, how Bloomingdale's is alleged to have violated SIPA is by embedding session replay code into its website. The intentional lack... So you would apply the Calder effects test. The step one is, like, what is the intentional lack of the defendant? This is paragraphs 10, 85, and 94. The allegation is by embedding code into the website, Bloomingdale's has aided and embedded third parties who do the intercepting, who actually intercept the data. So in Briskin, the court's looking at, what are Shopify, the third party? What's their contacts with the forum? Here, the only alleged acts and conduct of Bloomingdale's that is part of the violation is embedding software into its website, and there's no allegation of where that happened. So the court doesn't have to reach that. I think we should cut you off, because Briskin will happen, and we can deal with that then. All right, thank you. Thank you. So we took him way over his time, so let's do three minutes instead of just two. Thank you, Your Honors. Just quickly, before I begin, the citation to where the complaint alleges that Ms. Dugally entered data, as well as visiting the website, is at paragraph 11. And so where I would start is, just as I wouldn't want somebody pointing a video camera and watching what I'm doing at home, regardless of what I'm doing, I don't want somebody to look. I don't know if 11 really does that. Defendants knew that plaintiff and the other class members visited and entered data. Does that really say that plaintiff did? I don't know. It's pretty roundabout as a way to allege that. Well, I do think at the motion to dismiss stage, the complaint is construed in the light most favorable to the plaintiff. I'll also say Bloomingdale's raised this standing argument for the first time on appeal. Certainly, it is jurisdictional. So we're not contesting that it's proper to do that. But we didn't have the opportunity in the district court to consider whether the complaint could be amended to provide more specific allegations to the extent they're necessary. So at minimum, we would urge the court to remand of the district court to the extent it believes that more specific allegations about her specific conduct on the website are necessary, would be to remand rather than dismiss altogether. But you can't tell us today that you could actually do that. I'm not certain as I stand here today. But again, because the issue was never raised in the district court where we had the opportunity to amend, we didn't examine whether or not that would be viable at that stage. But to sort of return to the broader point, none of this court's cases have required that the specific information that is captured when a defendant violates a statutorily protected privacy right. Eichenberger, Patel, Campbell, Facebook tracking litigation, Jones, none of them have looked to whether the specific plaintiff's information was embarrassing to that plaintiff. It looked to whether that plaintiff sort of alleged something that was at the core of traditional privacy rights. And here, again, when you go online, when you are sort of browsing around, you're expecting that what you're doing is your own and not necessarily being filmed and transmitted to other third parties. To the question of anonymity, at record of excerpt page 20, it's clearly alleged that this data collection was not anonymous. This data collection, everything that was captured on the website, was sent to full story. And Meta stitches this information together into a broader composite picture. That's exactly the sort of conduct that this court held in Facebook tracking litigation did implicate core privacy concerns. And the only sort of difference between that case and this case is that the extent of the privacy violation is, this was sort of one brick in the privacy wall that the court considered in Facebook tracking litigation. But again, that goes to the sort of extent of the violation and not the nature of the violation. Thank you. Thank you very much, Your Honors. Thank you both sides for the helpful arguments this case has submitted.
judges: BERZON, FRIEDLAND, Kennelly